## Case No. 5,953.
### HALL v. WASHINGTON.
[4 Cranch, C. C. 722.][1]

Circuit Court, District of Columbia. March Term, 1836.

GAMING—POWERS OF THE CORPORATION OF WASHINGTON TO PROHIBIT — CONVICTION BY ALDERMEN—JURISDICTION OF JUSTICE OF THE PEACE.

1. A member of the board of aldermen of the city of Washington is not a competent magistrate to convict a person of a violation of the by-laws of the corporation.

2. A justice of the peace may reject a plea of misnomer in abatement. A justice of the peace has jurisdiction of penalties under by-laws, not exceeding $50.

3. The corporation of Washington has authority to restrain and prohibit gaming in the city.

Appeal from the judgment of C. T. Coote, Esq., a justice of the peace for the county of Washington, in an action of debt in the name of the mayor, board of aldermen, and board of common council of the city of Washington, for the penalty of $50, for keeping a faro-bank contrary to a by-law of the corporation.

Mr. Dandridge, for the appellant, objected, (among other things,) that the magistrate was a member of the board of aldermen, and, as such, was a plaintiff in the cause; and cited Ang. & A. Corp. 204; Dunham v. Rochester, 5 Cow. 462; Hesketh v. Braddock, 3 Burrows, 1847–1858; Pearce v. Atwood, 13 Mass. 324, 340; Com. v. Ryan, 5 Mass. 90; 7 Cow. 606.

Mr. Bradley, contra, cited Ang. & A. Corp. 389, 390, c. 17, § 8; Starkie, Ev. pt. 4, pp. 426, 427; Wood v. Mayor, etc., of London, 1 Salk. 397; Norris, Peake, Ev. p. 237, note a, and pages 220, 221, note; Ang. & A. Corp. 199; Falls v. Belknap, 1 Johns. 486; Corwein v. Hames, 11 Johns. 76.

THE COURT reversed the judgment, because the justice was a member of the board of aldermen and, as such, one of the plaintiffs, and therefore incompetent to try the cause.[2]

Before CRANCH, Chief Judge, and MORSELL, Circuit Judge.

CRANCH, Chief Judge. Appeal from the judgment of a justice of the peace for the penalty of $50, for setting up, keeping, and exhibiting a faro-table, on the 6th of May, 1835, being a device for the purpose of gaming for money, contrary to the act or acts of the corporation. By the by-law of Jan. 12th, 1830, § 1, it is enacted, "that no E. O.; A. B. C.; L. S. D.; faro, rolly-bolly, shuffle-board, equality-table, or other device, to be

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] In the case of Newton v. Corporation of Washington [unreported], at the same term, the judgment was affirmed; the justice, although an inhabitant of the city was not a member of the board of aldermen or common council, nor mayor, and therefore competent to decide the case.

used with cards, balls, dice, coin, or money, or any other game of hazard (except the game of billiards, upon licensed billiard-tables,) for the purpose of playing, or gaming for money or any thing in lieu thereof, shall be set up, kept, or exhibited in any part of this city, under a penalty of fifty dollars for every day or less time that such E. O." &c., "shall be so kept or exhibited, to be recovered before any single magistrate, of the person so setting up, keeping, or exhibiting the same." The warrant was issued against —— Hall, without stating any Christian name, and was served upon the appellant, who appeared before the justice and pleaded in abatement, ore tenus, that his name was Alexander C. Hall, and that the warrant was against —— Hall without any Christian name. The justice overruled the plea; whereupon the defendant by his counsel told the justice that he might render the judgment, and he would appeal. The judgment was thereupon rendered and the defendant appealed.

Mr. Dandridge, for appellant, contended, 1. That the justice should not have overruled the plea in abatement. 2. That the justice had not jurisdiction of a cause in which the penalty exceeded $20. 3. That the justice, being an inhabitant of the city, and an alderman, is interested, as the penalty goes to the city. 4. That congress had no authority to give the corporation power to pass such a by-law. 5. That congress, by the penitentiary act of 1831 [4 Stat. 445], having made the keeping of a faro-bank, or other common gaming-table a penitentiary offence, has thereby virtually repealed so much of the charter which authorizes the corporation of Washington "to restrain or prohibit all kinds of gaming" (see Charter of 1820, § 7), as relates to the keeping a faro-bank; and that the repeal of the power of the corporation to pass such a by-law, is a repeal of the by-law itself.

1st. As to the plea of misnomer. The proceedings before justices of the peace are ore tenus and need not be very formal; and unless the plea offered will enable the magistrate to decide the case according to the law, equity, and the right of the matter, I am of opinion that he may reject it. The plea offered in the present case was merely a dilatory plea. If the justice had allowed it the only effect would have been a very short delay, as he might immediately have issued another warrant against the defendant by his right name. I do not think that this is sufficient ground to reverse the judgment; particularly as the defendant, by confessing the judgment, admitted the merits of the case to be against him.

2d. That the justice had not jurisdiction of the cause. In the case of Ex parte Reed [Case No. 11,634], at the last term, it was decided by this court, upon great consideration, that the justices of the peace had jurisdiction of fines, penalties, and forfeitures un-

der the by-laws of the corporation. But it is now said that their jurisdiction is confined to cases where the fine, penalty, or forfeiture does not exceed $20. It is true that the jurisdiction when first given by the charter of 1802, was thus limited; but the act of March 1st, 1823, which extended the jurisdiction of justices to $50, provides that, "in all cases where the real debt and damages do not exceed the sum of fifty dollars, exclusive of costs, it shall and may be lawful for any one justice of the peace, of each respective county within the District of Columbia, wherein the debtor doth reside, to try, hear, and determine the matter in controversy," &c., "in the same manner and under the same rules and regulations, to all intents and purposes, as such justices of the peace are now authorized and empowered to do when the debt and damages do not exceed the sum of $20, exclusive of costs." The justices of the peace had, at that time, jurisdiction of cases under the by-laws, where the penalty did not exceed twenty dollars. This act, therefore, extends their jurisdiction to cases where the penalty does not exceed fifty dollars.

3d. The third objection, is, that the justice was interested, because he was an inhabitant of the city to whose benefit the penalty, in part, accrues; and that he was a member of the board of aldermen, and therefore nominally one of the plaintiffs. It is a general principle, that a judge, who is interested, is incompetent to try the cause; and by the common law, the smallest interest is said to be sufficient to disqualify him. But from the necessity of the case, he must often act in cases in which he is interested. Every citizen of the United States, is interested in every fine that accrues to the United States, yet the jurors and judges are citizens. In the States, the same thing occurs; and the interest increases in proportion to the diminution of the society that is to enjoy the benefit of the fine. Where shall we stop and say that the interest is sufficient to exclude the judge? In the case of Pearce v. Atwood, 13 Mass. 340, Chief Justice Parker said: "Any interest, therefore, however small, has been held sufficient to render a judge incompetent. The only known exception to this broad and general rule, exists where there may be a necessity that the person, so interested, should act, in order to prevent a failure in the administration of justice, as in the case of Com. v. Ryan, 5 Mass. 90." That case was a prosecution for a penalty of $50 accruing to the town of Boston, for keeping a billiard-table. There was a motion to quash the indictment, because the foreman of the grand jury, who found the indictment, was a taxable inhabitant of the town, and therefore interested to convict the defendant. Chief Justice Parsons said: "This interest at common law would be a sufficient objection; and it now is, unless by a necessary construction of our statutes, this ob-

jection is removed. As the municipal court has jurisdiction of the offence, and as it can proceed to indict only by the inhabitants of Boston, if the objection should prevail, that court is, in fact, ousted of its jurisdiction." As the offence could not be prosecuted in any other court, the motion to quash the indictment was overruled. The same point was decided in Hill v. Wells, 6 Pick. 108. The only case cited to the contrary was that of Mayor, &c., of Jonesborough v. McKee, 2 Yerg. ·168, which is a very short case, and reported without argument. The court decided "that a magistrate who is a member of an incorporated town, is not thereby disqualified from trying a warrant or suit in which the corporation is a party." Some of the English cases seem to make a difference as to the competency of a corporator as a witness in a case between the corporation and a stranger; and the corporation and a corporator; and also between private and public corporations; but to what extent that difference will affect the competency of a judge, does not appear. In a public corporation, the interest which each inhabitant of the city or town has, is only a common interest, and seems so nearly assimilated to that which every citizen of a state has in a fine or penalty which is to accrue to the state, and which has not been held sufficient to disqualify the witness or the judge, that I am inclined to think that the objection ought not to prevail. But it was said, and not contradicted, that the justice who tried the cause, was a member of the board of aldermen. If so, he was one of the plaintiffs, and could not sit in his own cause; according to the decision of this court, in the case of Barney v. Washington City [Case No. 1,033], at July term, 1805, where one of the reasons given for the reversal of the judgment, was, that it was rendered by Mr. Brent, the mayor, in a case in which he was a party. This objection seems to me to be fatal.

4th. The fourth objection is, that congress had no authority to give the corporation the power to restrain or prohibit gaming. I do not recollect by what argument, or on what ground this position was attempted to be supported, and can imagine none.

The 5th is, that congress by making the keeping of a faro-bank, a penitentiary offence, has virtually repealed so much of the charter, as gives the corporation power to prohibit the keeping of a faro-bank. But the penitentiary law and the by-law are not inconsistent. The penitentiary act punishes the offence generally; that is, when committed in any part of the district. The corporation, for the preservation of the morals of the city, superadd a penalty, when it is committed within their jurisdiction. The one is an offence against the government of the United States; the other is the violation of the by-law of the corporation. I think this objection also should be overruled. But

as the justice, who rendered the judgment, was incompetent to try the cause, the judgment ought to be reversed; but without costs.

THRUSTON, Circuit Judge, not having been present at the argument, gave no opinion.